be conceded the service of the Missionary was a salvage service, which is apparently the footing upon which the libellants seek to place it, then it involved the ordinary risks of that kind of service, and no more. It may be admitted that if a steamer, in trying to save a stranded vessel by its own motive power, is lost or injured by the movement, it is one of the necessities of the service, and is a risk assumed as such. It is because as well of the peril to the vessel or property saved, as the risk to the salvor, that courts of admiralty allow more than a quantum meruit compensation. If the Missionary had in this case been the sole motor, a more rigid measure of responsibility would have attached. And the case must turn mainly on this: Whose peculiar duty was it, under the circumstances, to foresee. and guard against the possible consequences of success in the effort which was about to be made? The Virginia had employed the Missionary to aid in the relief without any special contract as to the terms on which it was to. be affected. The former was many times larger and more powerful than the latter, and in case of motion, even though lashed together, would substantially control the Missionary. It was, therefore, the duty of the Virginia, in a special manner, to explore the spot that might be passed over in the movement proposed to be made, and to see that there was no obstacle in the way which would be likely to cause disaster. The fact that the officers of the Missionary acquiesced in the demand made for the assistance of the engines, did not make them responsible farther than for the consequences necessarily growing out of such consent. If the case had been reversed and the Virginia had been lost, it could scarcely be maintained, in the absence of willful fault on the part of the Missionary, that the latter would have been liable for the loss, or even for an apportionment of the loss. 2 Pars. Shipp. & Adm. 263. The Virginia had been on the "log heap" more than a day, and had had every opportunity for examination; in fact, had sounded, in order to ascertain the depth of water. The Missionary was employed by the Virginia to perform a special service—to aid in moving the latter from the "log heap." If the assistance rendered had been that of lighting only, there can be no doubt it would have been the duty of the Virginia to take reasonable care of the Missionary, and the Missionary, in such case, could scarcely be held accountable for the dangers of navigation; and the fact that the officers of the Missionary merely assented to the action of the engineers cannot change the rule. Webb, on the Missionary, gave notice to the captain of the Virginia of the approaching danger. It is asserted the warning was not heard, but it at least shows that some of the parties foresaw the peril of the movement—something which the Virginia ought also to have foreseen and guarded against. The evidence shows that if proper vigilance and prudence had been used by the Virginia, the disaster might have been prevented. The open snags could have been seen, the hidden ones discovered.

No great stress is placed upon the admissions of the captain of the Virginia, to the effect that the loss might be paid as soon as ascertained, because that was nothing more, at most, than an admission that the Virginia was liable for the loss. a question of law under the facts of the case.

The district court allowed five hundred dollars as the value of the services rendered, and four thousand dollars for the loss, or damage. [Case unreported.] I shall not give any interest on the decree of the district court. but will affirm the decree as the decree of this court for that amount as found of the present date.

## Case No. 16,958.

### VIRGINIA v. RIVERS.

[Nowhere reported: opinion not now accessible.]

VIRGINIA, The (ALBERTI v.). See Case No. 141.

VIRGINIA. The (BINFORD v.). See Case No. 1,412.

## Case No. 16,959.

### VIRGINIA v. DULANY.

[1 Cranch, C. C. 82.] [1]

Circuit Court, District of Columbia. April Term, 1802.

CRIMINAL LAW—COSTS—DISCONTINUANCE.

A prosecutor liable for costs upon an indictment for a misdemeanor, has no right to withdraw the prosecution without the consent of the attorney for the United States.

Indictment [against Daniel Dulany] for assault and battery on J. D. Westcott. I. V. Thomas's name was indorsed as prosecutor and liable for costs.

Mr. Jones, for defendant, stated that Westcott was satisfied and wished, with the consent of Thomas, that the defendant might be allowed to confess judgment for costs only.

Mr. Mason, attorney for the United States, objected on the ground that it was a prosecution in the name of the commonwealth. and no private prosecutor could compound, or interfere in the business.

THE COURT decided that the prosecutor had no right to withdraw the prosecution, and refused to permit it to be done without the consent of the attorney for the United States.

[1] [Reported by Hon. William Cranch, Chief Judge.]